## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

JAMES BOYLE, INDIVIDUALLY,                    CIVIL ACTION
AND JAMES E. BOYLE, CPA, L.L.C.

VERSUS                                         NO. 14-855

22ND JUDICIAL DISTRICT ATTORNEY'S              SECTION: "C"
OFFICE, AND WALTER REED, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY AS DISTRICT
ATTORNEY FOR THE 22ND JUDICIAL DISTRICT

### ORDER AND REASONS

Before this Court is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), or
alternatively 12(c). Rec. Doc. 4. The plaintiffs, James Boyle individually and James E. Boyle, CPA,
L.L.C. (Boyle, L.L.C.), oppose. Rec. Doc. 5. Having considered the record, the memoranda of
counsel and the law, the Court hereby GRANTS IN PART and DENIES IN PART defendant's
motion, granting Plaintiff Boyle leave to amend as set forth below.

## I. BACKGROUND

Plaintiff Boyle owns and operates Boyle L.L.C. as an accounting practice. Rec. Doc. 1. He
hired a third party, Daniel Harper, as a subcontractor to market plaintiffs' services in medical billing
and consulting to prospective clients.  *Id.* ¶ 3, at 2. Plaintiffs allege that, on or about April 10, 2009,
they issued two separate checks to Harper from their Iberia Bank account(s), for a total payment of
$2,500.00, in exchange for his promotional services. *Id.* ¶6, at 3. At the time the checks were issued,
there were sufficient funds in the issuing account(s) to cover the collective amount. *Id.* ¶ 7, at 3.

Without citing any particular provision of law, plaintiffs allege that the drafts issued to
Harper became non-negotiable or "stale" six months after issuance under state or federal banking
regulations. *Id.* Plaintiffs allege that they closed their Iberia Bank account(s) at some point more
than six months after issuing Harper's payments, *id.* ¶ 8, at 3, but before Harper made any effort to

negotiate the payment, *id.* ¶ 11, at 4. Plaintiffs allege that Harper waited upwards of a year to attempt to cash or deposit the check. *Id.*

In a letter dated December 5, 2012, Harper informed plaintiffs that the checks had been returned by Iberia Bank because the account was closed. *Id.* ¶ 9, at 4. On December 17, 2012, the plaintiffs offered to reissue the payment within thirty days of Harper executing a proposed release agreement, despite Harper's failure to promptly deposit the previous checks. *Id.* ¶ 11, at 4. However, Harper never responded to this offer. *Id.* ¶ 12, at 5. Instead, according to plaintiffs, Harper filed a complaint with the District Attorney or a third party who involved the District Attorney. *Id.* ¶ 13, at 5. Plaintiffs allege the District Attorney filed a criminal charge against Boyle for an alleged violation of Louisiana Revised Statute 14:67 (Theft), relying solely on Harper's statement and without any further investigation. *Id.* ¶¶ 14-15, at 5. As a direct consequence, the Justice of the Peace in St. Tammany Parish issued a warrant for Boyle's arrest and Boyle was arrested on or about April 16, 2013 at his Mandeville, LA, business office and in front of his staff. *Id.* ¶ 16, at 5. The District Attorney subsequently refused or dismissed the charges against Boyle based on additional information that he provided. *Id.* ¶ 18, at 6.

On April 11, 2014, plaintiffs filed this complaint claiming for deprivation of the constitutional rights under 42 U.S.C. §1983 and state law causes of action for defamation, libel, slander, false arrest, false imprisonment, and malicious prosecution. *Id.* ¶ 20, at 7. By the current motion, defendants argue that all claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) or 12(c). Rec. Doc. 4. Specifically, they argue: (1) that the District Attorney's Office is not a proper party; (2) that plaintiffs have failed to plead the existence of an unconstitutional policy on the part of the District Attorney in his official capacity; and (3) that the District Attorney is

2

entitled to absolute or qualified immunity from suit in his individual capacity. *Id.*

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) may be granted when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).The well-pleaded factual allegations of the complaint, taken as true, must raise the plaintiff's right to recover above the speculative level. *Twombly*, 550 U.S. at 555-56. Facts from which the court could infer the mere possibility of liability will not suffice. *Ashcroft*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)).  *A fortiori*, a complaint may be dismissed when it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to prevail. *Twombly*, 550 U.S. at 560-61.

On a motion to dismiss, the court must take all well-pleaded factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Nevertheless, "conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by document appended to complaint." *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974).

## III. LAW AND ANALYSIS

### A. The District Attorney's Office is not a Proper Party

Defendants first argue that the District Attorney's Office is not amenable to suit under either Louisiana law or § 1983. Rec. Doc. 4-1 at 3. This argument has merit. The federal courts adhere to

state law in determining whether a party has capacity for suit under Rule 17(b). *Hudson v. City of New Orleans*, 174 F.3d 677, 680 (5th Cir. 1999)."Louisiana law does not permit a district attorney's office to be sued in its own name. Rather, it requires that the claim be brought in his official capacity." *Id.* (citations omitted). Plaintiffs have already named the District Attorney in his official capacity. Rec. Doc. 1. Accordingly, the District Attorney's Office will be dismissed.

**B. Boyle, L.L.C. Fails to State a Claim under § 1983**

Defendants next argue that Boyle, L.L.C. is not a proper party and/or lacks standing to proceed against them under§ 1983 because it was not, nor could it have been wrongfully detained. Rec. Doc. 4-1 at 3. Boyle, L.L.C. counters that it is claiming directly on its own behalf for injury to its business reputation sustained when Boyle was arrested on company premises. Rec. Doc. 5 at 9-10. It argues that this injury constitutes a deprivation of its Fourteenth Amendment rights. *Id.* While this might theoretically cure the standing problem, it does not help the L.L.C. survive this motion because the L.L.C.'s business reputation is not constitutionally protected.

In *Paul v. Davis*, the Supreme Court held that reputation alone does not implicate any liberty or property interests protected by Due Process. 424 U.S. 693, 711-12 (1976). As such, something more than simple defamation by a state official must be involved to establish a claim under §1983. *Id.* In this case, plaintiffs claim nothing more than simple defamation caused by Boyle's arrest. Rec. Doc. 1 at 7. Accordingly, this Court cannot find that any of Boyle L.L.C.'s civil rights have been violated. This claim will be dismissed.

**C. Boyle Must Amend his §1983 Claim Against Reed in his Official Capacity**

Municipalities and local government agencies can be held liable for constitutional torts under 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 694 (1978). To succeed on a *Monell* claim against a local government entity, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

**1. "Moving Force" Behind a Constitutional Violation**

Defendants argue, assuming that they did have an official policy of failing to investigate accusations, that such policy could not serve as the basis for an official capacity claim because it was not the "moving force" behind any violation of Boyle's constitutional rights. Rec. Doc. 4-1 at 7. They argue that prosecutorial failure to investigate, without more, does not violate the Constitution. *Id.* "The accused is not 'entitled to judicial oversight or review of the decision to prosecute.' " *Albright v. Oliver*, 510 U.S. 266, 274 (1994) (plurality opinion). The Fifth Circuit has abrogated its prior rulings recognizing an implied constitutional right to be free from criminal proceedings without probable cause in light of disapproving Supreme Court precedent. *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc). The absence of probable cause must implicate a right rooted in the text of a particular amendment. *Id.* at 953-54; *accord Albright*, 510 U.S. at 273.

Boyle claims that his arrest creates a basis for finding that his rights were violated. Rec. Doc. 5 at 10. The Supreme Court and Fifth Circuit have recognized that where an arrest is made pursuant to a warrant, the failure to investigate the underlying accusation beforehand can only violate the constitution if it results in the warrant's invalidity under the Fourth Amendment. *See Albright*, 510 U.S. at 271; *Baker v. McCollan*, 443 U.S. 137, 143 (1979). Arrest warrants, like search warrants,

must be issued by passive, neutral magistrates on the basis of sworn affidavit showing the existence

of probable cause. U.S. Const. amend. IV; *Giordonello v. United States*, 357 U.S. 480, 485 (1958).

The Fourth Amendment requires that "the judicial officer issuing such a warrant be supplied with

sufficient information to support an independent judgment that probable cause exists for the

warrant." *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 564 (1971). However, the

failure to include certain information in a warrant affidavit will not invalidate the warrant unless it

appears that the issuing magistrate was misled by an omission that the affiant either knew was

misleading or would have known was misleading absent reckless disregard for the truth. *United

States v. Leon*, 468 U.S. 897, 923 (1984) (citing *Franks v. Delaware*, 438 U.S. 154 (1978); *United

States v. Gibbs*, 421 F.3d 352, 358 (5th Cir. 2005)).

Here, plaintiff has alleged that it was "inconceivable that such conduct as that alleged against

Boyle could render a check-issuer guilty or possibly guilty of the crime of theft . . . ." Rec. Doc. 1,

¶ 25 at 8. While this allegation supports that the justice of the peace was misled by information that

was either knowingly or recklessly false, it is too conclusory to be taken as true for the purposes of

a motion to dismiss. Boyle must plead specific facts plausibly showing that his arrest violated his

Fourth Amendment rights. He must explain both why the circumstances of his case negated any

possible liability for theft and also why any reasonable prosecutor in the defendant's position would

have been on the lookout for those circumstances in this case, absent reckless disregard for the truth.

Plaintiff has not met this demanding burden.

Because neither party correctly identified this issue in the briefing up to this point, the Court

will give plaintiff the opportunity to amend his complaint in light of this Order and Reasons before

attempting to dismissing this claim. Defendant Reed may re-urge this ground for dismissal after

Boyle has had the opportunity to amend. Failure to amend will result in dismissal with prejudice.

## 2. Official Policy

Next, defendant argues that Boyle's allegation of an official policy is conclusory and only based on a single instance of alleged misconduct. Rec. Doc. 4-1 at 10. "The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Where no rule has been formally announced, the policy requirement can be satisfied by a final policy maker's isolated decision to violate an individual's rights. *Id.* (citing *Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000); *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008)). Finally, where the policy maker fails to act, an official policy of inaction may be decreed, so long as the need for action is "so obvious and the [failure to intervene] so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

Boyle argues that he has successfully pleaded an official policy by alleging that defendant "had policy making authority and had established certain customs and policies that governed the process of obtaining, reviewing and evaluating evidence and investigating whether a crime had (or had not) occurred" and further that these policies, etc. did not "mandate sufficient investigation of allegations, evidence, and applicable law prior to the issuance of an arrest warrant . . . ." Rec. Doc. 5 at 12; Rec. Doc. 1, ¶¶ 22-26, at 7-9.

It has been stated that after *Twombly* and *Iqbal*, a plaintiff cannot survive dismissal on a *Monell* claim simply by pointing to a violation of his rights and alleging a policy around it. *See, e.g.*,

*Whitley v. Hanna*, 726 F.3d 631, 649 (5th Cir. 2013) ("The proposed amended complaint makes no specific factual allegations of the county's policies and simply adds the words 'policies, practices, and/or customs' to Whitley's perceived wrongs. Such allegations are insufficient to survive dismissal."). To a degree, the wisdom of this general philosophy depends on the kind of misconduct alleged. *See Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 843-44 (S.D. Tex. 2011). When a plaintiff is injured by conduct that is highly discretionary in nature (e.g., the use of force), or conduct so clearly offensive that no rational, knowledgeable policymaker would seek to encourage (e.g., sexual harassment), or conduct that may be difficult for a policymaker to detect, skepticism regarding the existence of a policy is arguably warranted. *Cf., e.g.*, *id.*

The conduct at issue in this case may or may not fall into one these categories. For the time being it makes little sense to speculate. The Court will revisit this issue, if, and only if, plaintiff successfully pleads conduct that violated his Fourth Amendment rights.

## D. Boyle Must Amend his §1983 Claim Against Reed in his Individual Capacity

### 1. Absolute Immunity

The defendants claim that Reed is absolutely immune from civil liability for any action taken in connection with Boyle's case. Rec. Doc. 4-1 at 9. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, (1993) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)) (internal quotation marks omitted). In the alternative, qualified immunity applies. *Id.* "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Id.* at 273. However, "[a] prosecutor's administrative duties and those investigatory

functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Id.*

The Supreme Court has recognized that "[t]he act of procuring an arrest warrant 'is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment.' " *Burns*, 500 U.S. at 505 (1991) (Scalia, J., concurring in part, dissenting in part) (quoting *Malley v. Briggs*, 575 U.S. 335, 342-43 (1986)). It is far enough removed, in fact, that the Court has declined to extend absolute immunity to prosecutors when they give legal advice on whether probable cause exists to arrest a suspect. *Id.* at 492-93. It follows that absolute immunity does not extend to circumstances when prosecutors take on the role of the police officer by directly procuring the arrest warrant. *Cf. Buckley*, 509 U.S. at 275 ("[I]t would be anomalous, to say the least, to grant prosecutors only qualified immunity when offering legal advice to police about an unarrested suspect, but then to endow them with absolute immunity when conducting investigative work themselves . . . ."); *Burns*, 500 U.S. at 478 ("[I]ndeed, it is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice."). Therefore, Reed is not subject to absolute immunity with respect to his role in this incident.

**2. Qualified Immunity**

Reed claims the defense of qualified immunity. Rec. Doc. 4-1 at 10. The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). The bifurcated test for qualified immunity is: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if

so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998).

In this case, plaintiff  will surmount the Reed's assertion of qualified immunity, if he can properly plead that Reed's policies were "causally connected" to the deprivation of his Fourth Amendment rights. *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443-44 (5th Cir. 1999). This is functionally no different than pleading that Reed's policies were a "moving force" behind a violation of plaintiff's constitutional rights. As such, the Court will take up this issue again after plaintiff amends his complaint to attempt to plead a Fourth Amendment violation.

**E. Boyle's State Law Claims May Move Forward**

Defendants argue that Boyle's state law claims should be dismissed against Reed on account of Reed's absolute immunity. Rec. Doc. 4-1 at 11. As Reed argues, Louisiana has embraced the reasoning of the U.S. Supreme Court in extending absolute immunity for prosecutorial decision-making. *Knapper v. Connick*, 96-0434 (La. 10/15/96), 681 So.2d 944, 947-48. As already stated, the U.S. Supreme Court's absolute immunity jurisprudence is not helpful to defendants. Therefore, Boyle's state law claims will not be dismissed for this particular reason.

Accordingly,

IT IS ORDERED that the Motion to Dismiss filed by 22nd District Attorney's Office, and Walter Reed, individually and in his official capacity as District Attorney for the 22nd Judicial District is PARTIALLY GRANTED and PARTIALLY DENIED. Rec. Doc. 4. The 22nd Judicial District Attorney's Office and James E. Boyle CPA, L.L.C. are hereby DISMISSED as parties. Plaintiff is given thirty (30) days from the date of this Order to amend his complaint to properly

allege a violation of his Fourth Amendment rights.

New Orleans, Louisiana this 13th day of August, 2014.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE